## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOEL GORDON, dba JOEL GORDON PHOTOGRAPHY | ) ) ) | |
| Plaintiff, | ) ) | Case No. |
| v. | ) ) | |
| HOUGHTON MIFFLIN HARCOURT PUBLISHING CO., | ) ) ) | |
| Defendant. | ) ) | |

---

## COMPLAINT
(Jury Trial Demanded)

---

This is an action for copyright infringement brought by Plaintiff Joel Gordon, dba Joel Gordon Photography ("Gordon"), the owner of copyrights to photographs described hereafter, against Defendant Houghton Mifflin Harcourt Publishing Company ("HMH") for unauthorized uses of Gordon's photographs. Plaintiff demands a jury trial and states:

### PARTIES

1.      Gordon is a professional photographer who makes his living by creating and licensing photographs. He resides in New York, New York.

2.      HMH is one of the world's longest-established publishing houses and largest providers of pre-K–12 educational textbooks to 50 million students in more than 150 countries. HMH is a Massachusetts corporation.

3.      HMH sells and distributes its publications in the Eastern District of Pennsylvania and throughout the United States, including publications at issue in which Gordon's photographs are unlawfully reproduced. At all times pertinent to the allegations herein, HMH acted through

and in concert with its various imprints, divisions, partners, subsidiaries, predecessors, and affiliates.

## JURISDICTION

4.      This action asserts claims arising under the Copyright Act, 17 U.S.C. §§ 101 *et seq.*  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 (federal question) and 1338 (conferring original jurisdiction over claims arising under any act of Congress relating to copyrights).

## VENUE

5.      Venue is appropriate in this District pursuant to 28 U.S.C. §§ 1391(a) and (b) and 28 U.S.C. § 1400(a) because Defendant conducts substantial business within the Eastern District of Pennsylvania; Defendant infringed Plaintiff's copyrights within this District; and a substantial part of the events or omissions and alleged misconduct giving rise to Plaintiff's claims occurred in this District.

## FACTS COMMON TO ALL COUNTS

6.      Gordon is the author and owner of the photographs attributed to him in the attached Exhibit 1, and Susan Lerner is the author and owner of the photographs depicted in Exhibit 1 attributed to her (together the "Photographs").  Prior to this action, Lerner transferred to Gordon the exclusive right to grant licenses to others to reproduce, distribute, and display her photographs.

7.      Each of the Photographs has been registered with the United States Copyright Office, as set forth in Exhibit 1.

8.      Between 1990 and 2008, in response to permission requests from HMH, Gordon sold HMH limited licenses to use copies of the Photographs in particular educational

publications identified in HMH's requests and Gordon's licenses.  The licenses Gordon granted HMH were expressly limited by number of copies, distribution area, language, duration, and/or media, as summarized in Exhibit 1.

9.      HMH represented to Gordon that it intended to use the Photographs within the negotiated license terms.

10.     Gordon relied on HMH's representations regarding its uses in determining the license fees.

11.     At the time HMH represented to Gordon that it needed specified, limited licenses to use the Photographs in particular publications, HMH often knew its actual uses would exceed the rights it was requesting and paying for.

12.     HMH intended by its misrepresentations to obtain access to the Photographs at a lower cost than it would have paid had it been honest in its dealings and to conceal the copyright infringements that followed.  HMH was successful and achieved both these wrongful ends.

13.     Shortly after obtaining the licenses from Gordon, HMH exceeded the licenses and infringed Gordon's copyrights in various ways, including:

     a.  printing more copies of the Photographs than Gordon authorized;

     b.  distributing publications containing the Photographs outside the authorized distribution area;

     c.  publishing the Photographs in electronic, ancillary, or derivative publications without permission;

     d.  publishing the Photographs in international editions and foreign publications without permission;

     e.  publishing the Photographs beyond the specified time limits; and/or

     f.  publishing and distributing Gordon's works in subsequent editions, foreign language translations, and various other publications without obtaining authorization.

14.     After obtaining access to the Photographs, HMH used the Photographs without any license or permission in additional publications that have not yet been identified.  Because HMH alone knows of these wholly unauthorized uses, Gordon cannot further identify them without discovery.

15.     Information about HMH's uses of Gordon's Photographs is not publicly available. HMH alone knows the full extent to which it has infringed Gordon's copyrights by making unauthorized uses of the Photographs, but it has not shared this knowledge with Gordon.

### *HMH's Pattern of Infringement*

16.     HMH's practice of requesting and paying for a license for limited uses, and then exceeding those licensed uses, extends beyond the publications in suit.  While the lost licensing fee to any individual copyright holder is relatively small, HMH has sold and distributed millions of its publications, generating billions in revenue.  HMH's business model, built on a foundation of pervasive and willful copyright infringement, deprived Gordon and hundreds of other photographers and visual art licensors of their rightful compensation and unjustly enriched HMH with outlandish profits in the process.

17.     In *Wood v. Houghton Mifflin Harcourt Publ'g Co.*, 589 F. Supp. 2d 1230, 1239-43 (D. Colo. 2008), the District of Colorado found HMH liable for copyright infringement for engaging in the same kind of misconduct alleged here.

    a.  The court found that HMH sought and secured a license to use Wood's photographs in no more than 40,000 copies of *The Language of Literature*, Grade 7, 2001 and *The Language of Literature*, Grade 7, 2002.  HMH admitted that it published more than 200,000 copies of each of these publications, and a total of 1,382,264 copies of the publications combined.  The Court ruled, "for these . . . publications, Wood has met his burden of establishing that HMH exceeded the scope of its license and thus violated his copyright." *Id.* at 1239.

    b.  The court found that HMH sought and secured a license to use Wood's photographs

in no more than 40,000 copies of Great Source *Summer Success Reading Magazine* ("SSRM"), Grade 5, 2001; Grade 7, 2002. HMH published 204,395 copies of SSRM 5, 2001; and 103,795 copies of SSRM 7, 2002. The Court ruled, "for these . . . publications, Wood has met his burden of establishing that HMH exceeded the scope of its license and thus violated his copyright." *Id.*

c.  The court found HMH used Wood's photographs without any permission at all in two later editions of SSRM, SSRM 5, 2008 and SSRM 7, 2008, and granted summary judgment on these claims. *Id.* at 1240, 1243.

d.  This court rejected HMH's argument that there was a dispute over the terms in the licenses, or trade usage, that would excuse its infringements. It dismissed HMH's reliance on "self-serving deposition testimony of its Rule 30(b)(6) witness, and because the phrase 'under 40,000' seems to the Court to be a clear term not subject to a contrary (perhaps even nonsense) imputation that pursuant to trade usage it means 'an unlimited amount greater than 40,000,' this Court concludes that a reasonable jury could not find that the plain language of the licensing contracts was put into dispute by [HMH's employee's] understanding of industry practice." *Id.* at 1241-42.

18.  Numerous other photographers and stock photography agencies have been forced to sue HMH alleging copyright infringement claims like those asserted by Gordon in this action. Since 2006, HMH has been sued for copyright infringement in furtherance of the scheme described herein in at least the following actions:

a.  *Jay Maisel v. McDougal Littell (a division of Houghton Mifflin Company),* Case No. 1:06-cv-00765-LMM (S.D.N.Y.);

b.  *Grant Heilman v. Houghton Mifflin Harcourt Publishing Company, et al.,* Case No. 08-cv-775 (D. Colo.);

c.  *Neal Beidleman v. Holt, Rinehart and Winston (a division of Harcourt, Inc.) et al.,* Case No. 07-cv-1220 (D. Colo.);

d.  *Michael Bergt v. McDougal Littell (a division of Houghton Mifflin Company) et al.,* Case No. 1:06-cv-4645 (N. D. Ill.);

e.  *Phil Degginger and Ed Degginger v. Houghton Mifflin Harcourt Publishing Company, et al.,* Case No. 2:10-cv-3069 (E.D. Pa.);

f.  *DRK Photo v. Houghton Mifflin Harcourt Publishing Company, et al.;* Case No. 3:09-cv-8225 (D. Ariz.);

g.  *Grant Heilman Photography, Inc. v. Houghton Mifflin Harcourt Publishing*

*Company, et al.,* Case No. 5:10-cv-584 (E.D. Pa.);

h.   *Julio Larraz v. Houghton Mifflin Harcourt Publishing Company, et al.,* Case No. 1:08-cv-10645 (D. Mass.);

i.   *Muench Photography, Inc. v. Houghton Mifflin Harcourt Publishing Company, et al.,* Case No. 09-cv-2669 (S.D.N.Y.);

j.   *Hilda Semerdjian v. Houghton Mifflin Harcourt Publishing Company, et al.,* Case No. 1:07-cv-7496 (S.D.N.Y.);

k.   *Phyllis Shuptrine v. Houghton Mifflin Harcourt Publishing Company, et al.;* 1:07-cv-181 (E.D. Tenn.);

l.   *Robert Vavra v. Houghton Mifflin Harcourt Publishing Company, et al.,*   Case No. 1:08-cv-10526 (D. Mass.);

m.   *Viesti Assocs. et al. v. Houghton Mifflin Harcourt Publishing Company, et al.,* Case No. 1:09-cv-743 (D. Colo);

n.   *Viesti Assocs. et al. v. Houghton Mifflin Harcourt Publishing Company, et al.,* Case No. 1:09-cv-2933 (D. Colo);

o.   *Ted Wood v. Houghton Mifflin Harcourt Publishing Company, et al*., Case No. 1:07-cv-1516 (D. Colo.);

p.    *Alaska Stock, LLC v. Houghton Mifflin Harcourt Publishing Company, et al*., Case No. 3:09-cv-61 (D. Ak.);

q.   *Tom Bean v. Houghton Mifflin Harcourt Publishing Company, et al.,* Case No. 3:07-cv-8063 (D. Ariz.);

r.   *Tom Bean v. Houghton Mifflin Harcourt Publishing Company,* Case No. 3:10-cv-8034 (D. Ariz.);

s.   *Robert Frerck v. Houghton Mifflin Harcourt Publishing Company,* Case No. 2:10-cv-3555 (E.D. Pa.);

t.   *Pacific Stock, Inc. v. Houghton Mifflin Harcourt Publishing Company, et al*., Case No. 1:09-cv-00164 (D. Haw.);

u.   *Lester Lefkowitz v. Houghton Mifflin Harcourt Publishing Company,* Case No. 1:12-cv-10614 (D. Mass.);

v.   *Robert Lewine v. Houghton Mifflin Harcourt Publishing Company,* Case No. 5:12-cv-535 (N.D. Ca.);

    w.  *Minden Pictures, Inc. v. Houghton Mifflin Harcourt Publishing Company,* Case No. 3:10-cv-3212 (N.D. Ca.);

    x.  *Harrison Shull v. Houghton Mifflin Harcourt Publishing Company,* Case No. 11-cv-3012 (D. Colo.);

    y.  *Ellen Senisi, Inc. v. Houghton Mifflin Harcourt Publishing Company, et al.*, Case No. 1:13-cv-02891 (S.D.N.Y.).

19.    When HMH copied, distributed and used the Photographs without authorization, HMH had a duty in equity and good conscience to disclose those uses.  This is especially so because HMH knew precisely when its use of the Photographs exceeded the applicable license limitations, or were used without any license, but Gordon had no such knowledge nor any reason to assume HMH was being deceitful in the uses it was making of the Photographs.

20.    HMH's scheme was effective and worked as intended.  For years the infringements that followed HMH's deceptive practices were concealed.  To this day, HMH alone knows the full extent to which it has infringed Plaintiff's copyrights.

21.    The exhibit attached hereto is incorporated into this complaint by this reference.

## COUNT I
## COPYRIGHT INFRINGEMENT

22.    Gordon incorporates herein by this reference each and every allegation contained in the paragraphs set forth above.

23.    The foregoing acts of HMH constitute infringements of Gordon's copyrights in the Photographs in violation of 17 U.S.C. §§ 501 *et seq*.

24.    Gordon suffered damages as a result of HMH's unauthorized use of the Photographs.

WHEREFORE, Plaintiff requests the following:

1.    A permanent injunction against Defendant and anyone working in concert with it

from copying, displaying, distributing, selling or offering to sell Plaintiff's Photographs described in this Complaint and Plaintiff's photographs not included in suit.

2.      As permitted under 17 U.S.C. § 503, impoundment of all copies of Plaintiff's Photographs used in violation of Plaintiff's copyrights as well as all related records and documents and, at final judgment, destruction or other reasonable disposition of the unlawfully used Photographs, including digital files and any other means by which they could be used again by Defendant without Plaintiff's authorization.

3.      An award of Plaintiff's actual damages and all profits derived from the unauthorized use of Plaintiff's Photographs or, where applicable and at Plaintiff's election, statutory damages.

4.      An award of Plaintiff's reasonable attorneys' fees as permitted by 17 U.S.C. § 505 or any other statute, regulation, or agreement between the parties.

5.      An award of Plaintiff's court costs, expert witness fees, interest and all other amounts authorized under law.

6.      Such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury of all issues permitted by law.


DATED:  August 11, 2014.

                                        Plaintiff Joel Gordon,
                                        by his attorney,

                                        *s/ Maurice Harmon*
                                        Maurice Harmon
                                        Harmon & Seidman LLC
                                        11 Chestnut Street
                                        New Hope PA 18938

(917) 561-4434
maurice@harmonseidman.com