IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOEL GORDON, d/b/a JOEL GORDON PHOTOGRAPHY | : | CIVIL ACTION |
| v. | : | |
| HOUGHTON MIFFLIN HARCOURT PUBLISHING CO. | : | NO. 14-4703 |

**MEMORANDUM**

L. Felipe Restrepo, J.                                                                                                June 23, 2015

Presently before the Court is Defendant Houghton Mifflin Harcourt Publishing Co. ("HMH")'s Motion to Transfer Venue to the Southern District of New York pursuant to 28 U.S.C. § 1404. For the reasons that follow, Defendant's Motion to Transfer Venue will be granted, and the case will be transferred to the United States District Court for the Southern District of New York.

## I.     FACTUAL AND PROCEDURAL HISTORY

Plaintiff Joel Gordon is a professional photographer who resides in New York, New York. Compl. ¶ 1. Gordon makes his living by creating and licensing his photographs, and operates under the business name "Joel Gordon Photography." Id. Defendant HMH is a Massachusetts corporation, with a principal place of business in Boston, Massachusetts. Id. at ¶ 2. HMH is one of the world's longest-established publishing houses and largest providers of pre-K-12 educational textbooks. Id. HMH sells and distributes its publications throughout the United States, including within the Eastern District of Pennsylvania. Id. at ¶ 3.

At issue in this action is HMH's use of 71 photographs authored and owned by Gordon (the "Photographs").[1] The Photographs have been registered with the United States Copyright

---

[1] Non-party Susan Lerner is the author and owner of 2 of the 71 photographs, but, prior to this action, Lerner transferred to Gordon the exclusive right to grant licenses to others to reproduce, distribute,

1

Office. Compl. ¶ 7; see also Compl. ex. 1. Between 1990 and 2008, Gordon licensed the Photographs to HMH for use in HMH's educational publications. Compl. ¶ 8. Each of the licenses placed certain restrictions on HMH's use of the Photographs, including the number of copies, distribution area, language, duration, and/or permissible media. Id.; see also Compl. Ex. 1.

The Photographs were licensed to HMH by way of invoice, which generally contained the terms and conditions of the license on the reverse side of the invoice. Def.'s Mem. of Law in Supp. 2 n.2. The Photographs were licensed via 35 invoices. Compl. Ex. 1; Def.'s Mem. of Law in Supp. 2. The parties have thus far located 29 of those invoices, but they have only been able to locate the complete terms and conditions for a portion of those invoices. Def.'s Mem. of Law in Supp. at 2. Twenty of the licenses contain what HMH describes a "permissive forum selection clause."[2] One of the licenses contains what HMH describes as a "mandatory forum selection clause."[3] The terms of the remaining invoices/licenses are unknown at this time or neutral as to venue. Table 1 (below) summarizes the current state of affairs.

| TABLE 1 | | |
|---|---|---|
| | No. of Invoices/Licenses | No. of Photographs/Claims |
| "Permissive" Clause | 20 | 46 |
| "Mandatory" Clause | 1 | 1 |
| Unknown/Neutral | 14 | 24 |
| Total | 35 | 71 |

---

and display these 2 photographs. Compl. ¶ 6; see also Compl. Ex. 1. Lerner apparently lives and works in both New York, New York and southern Florida. See Def.'s Mem. of Law in Supp. 6 n.4.

[2]     See Def.'s Mem. of Law in Supp. 3 ("This agreement shall be interpreted in accordance with the law of the State of New York and the parties consent to the jurisdiction of the Courts of New York.") (quoting the relevant portion of select invoices attached thereto as Exhibit B).

[3]     See Def.'s Mem. of Law in Supp. 2 ("Any suit hereunder shall be brought in the state or federal courts located in New York City.") (quoting the relevant portion of an invoice attached thereto as Exhibit A).

Gordon alleges that shortly after obtaining licenses for the Photographs, HMH exceeded the licenses and infringed Gordon's copyrights in various ways, including: (1) printing more copies of the Photographs than Gordon authorized; (2) distributing publications containing the Photographs outside the authorized distribution area; (3) publishing the Photographs in electronic, ancillary, or derivative publications without permission; (4) publishing the Photographs in international editions and foreign publications without permission; (5) publishing the Photographs beyond the specified time limits; and/or (6) publishing and distributing the Photographs in subsequent editions, foreign language translations, and various other publications without obtaining authorization. Compl. ¶ 13. Gordon alleges that these infringements were no mistake – Gordon claims HMH intended at all times to exceed the scope of the licenses and infringe on Gordon's copyrights, and deliberately mislead Gordon in the licensing negotiations to secure a more favorable price for the photographs. Id. at ¶¶ 9-12. Gordon also alleges that HMH has engaged is a pattern of similar copyright infringement, as evidenced by tens of similar suits filed across the country by photographers and stock photography agencies against HMH. Id. at ¶¶ 16-20. Gordon alleges that HMH's business model is "built on a foundation of pervasive and willful copyright infringement, [and that HMH's conduct] deprived Gordon and hundreds of other photographers and visual art licensor of their rightful compensation and unjustly enriched HMH with outlandish profits in the process." Id. at ¶ 16. HMH denies Gordon's allegations. See generally Def.'s Answer.

Gordon filed the Complaint in this action on August 11, 2014. ECF No. 1. Following an extension of time to answer the Complaint, HMH timely filed the pending Motion to Transfer Venue on October 22, 2014, and timely filed its Answer to the Complaint on October 24, 2014. ECF Nos. 7-8. Gordon filed a Response in Opposition to the Motion to Transfer on November 5,

2014. ECF No. 10. HMH filed a Reply in Support of the Motion to Transfer on November 12, 2014. ECF No. 11. The Court held oral argument on the Motion to Transfer on December 16, 2014. ECF Nos. 15-16.[4]

## II. DISCUSSION

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

"Analysis of a request for a § 1404(a) transfer has two components." Family Financial Centers LLC v. Cox, 2015 WL 790038, at *3 (E.D. Pa. Feb. 25, 2015). First, both the original venue and the requested venue must be proper. Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995). Second, "the Court is required to undertake a balancing test in deciding whether the 'interests of justice [would] be better served by a transfer to a different forum.'" Family Financial Centers LLC, 2015 WL 790038, at * 3 (quoting Jumara, 55 F.3d at 879).

With respect to the first component, the Complaint sets forth a single count of Copyright infringement, and asserts no other federal or state law claims. Compl. 8-9. Accordingly, venue for this action is governed by a specific venue provision, 28 U.S.C. § 1400(a), which reads: "Civil actions, suits, or proceedings arising under any Act of Congress relating to copyrights or exclusive rights in mask works or designs may be instituted in the district in which the defendant or his agent resides or may be found." Venue for this action is also governed by the general venue provision, 28 U.S.C. § 1391(b), which states that venue is proper in: "(1) a judicial district in which any defendant resides . . . ; (2) a judicial district in which a substantial part of the events

---

[4] During oral argument, counsel for the parties indicated that there was an above average chance that this matter could be settled by the parties in the near future. Unfortunately, the parties subsequently informed the Court that this matter could not be settled and that an adjudication of the Motion to Transfer Venue would be required to advance this action. Accordingly, the Motion to Transfer Venue is now ripe of disposition.

4

or omissions giving rise to the claim occurred . . . ." For all venue purposes, when a business entity like HMH is a defendant, it shall be deemed to reside in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question. 28 U.S.C. § 1391(c)(2). In addition, a corporation that is subject to personal jurisdiction at the time the action is commenced shall be deemed to reside in any district in that state within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate state. 28 U.S.C. § 1391(d). The parties do not dispute that HMH has sufficient contacts with the Eastern District of Pennsylvania to establish this Court's personal jurisdiction over the Defendant. Furthermore, HMH's registered agent in Pennsylvania "resides" and "may be found" in the Eastern District of Pennsylvania, as set forth by 28 U.S.C. § 1400(a).[5] Accordingly, HMH resides in the Eastern District of Pennsylvania for venue purposes. Thus, venue is proper in the Eastern District of Pennsylvania.

HMH's requested venue for the action, the Southern District of New York, is also proper. HMH undoubtedly "resides" in the Southern District of New York on account of its substantial operations in New York, New York. Furthermore, a substantial part of the events giving rise to Gordon's claim occurred in the Southern District of New York, as the relevant licenses were negotiated and granted by Gordon while he operated in that district, and HMH allegedly violated Gordon's copyright by distributing infringing works in that district as well.

Having established that the first component of the § 1404 transfer analysis is satisfied, the Court must now undertake the more complicated task of balancing the various public-interest and private-interest factors that inform the transfer decision. As for public-interest factors, the Court of Appeals has directed consideration of the following: (1) the enforceability of the

---

[5] According to the Pennsylvania Department of State, HMH's registered office address in Pennsylvania is "C T CORP System," located in "Philadelphia."

judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with applicable state law in diversity issues. Jumara, 55 F.3d 879-80. The private-interest factors to be considered include: (1) plaintiff's forum preference as manifested in the original choice; (2) the defendant's forum preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records – but only to the extent that the files could not be produced in the proposed forum. Id. at 879. This is not an exhaustive list of the factors that may be considered, and the district court must utilize a case-specific approach to balancing the relevant interests. Id. at 878 (discussing the majority opinion in Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22 (1988)). Having considered the public-interest and private-interest factors implicated by the facts and circumstances of this action, and for the reasons set forth below, the Court finds that transfer to the United States District Court for the Southern District of New York is appropriate.

    **A.**     <u>**Private-Interest Factors**</u>

As preliminary matter, this Court agrees with HMH that the private-interest factors for the claim based on the 2008 license must be regarded as weighing entirely in favor of transfer to the Southern District of New York. When faced with a mandatory forum selection clause, such as the one in the 2008 license, the Supreme Court has clearly dictated the required approach: "When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, of for

their pursuit of the litigation. A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum." Atlantic Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Texas, 134 S. Ct. 568, 582 (2013). Accordingly, the private-interest factors for the claim based on the 2008 license weigh entirely in favor of transfer.

        1.     *Plaintiff's Forum Preference*

Most recently, Gordon has expressed a clear preference for litigating this action in the Eastern District of Pennsylvania, as evidenced by his decision to file the Complaint with this Court, and his opposition to HMH's motion to transfer venue. Generally, a Plaintiff's forum preference is given great weight, and "should not be disturbed lightly." In re Amkor Tech, Inc. Sec. Litig., 2006 WL 3857488, at *3 (E.D. Pa. Dec. 28, 2006) (quoting Weber v. Basic Comfort, Inc., 155 F. Supp. 2d 283, 285 (E.D. Pa. 2001). Courts in this district, however, have long recognized that little or no deference is warranted where none of the operative facts occurred in the plaintiff's selected forum. See, e.g., Synthes, Inc. v. Knapp, 978 F. Supp. 2d. 450, 459 (E.D. Pa. 2013); Lindley v. Caterpillar, Inc., 93 F. Supp. 2d. 615, 617 (E.D. Pa. 2000); Fid. Leasing, Inc. v. Metavec Corp., 1999 WL 269922, at *2 (E.D. Pa. Apr. 29, 1999); Rowles v. Hammermill Paper Co., Inc., 689 F. Supp. 494, 496 (E.D. Pa. 1988). Here, Plaintiff does not reside in this district, and few (if any) of the operative facts occurred in this district.

In evaluating Plaintiff's forum preference, the Court must also consider the permissive forum selection clauses that apply to 46 of the 71 works that are at issue in this action. Necessarily, "[p]ermissive forum selection clauses are given less weight than mandatory ones because they do not exclusively limit the appropriate venue for litigation." De Lage Landen Fin. Servs., Inc. v. Elite Tech. (N.Y.), Inc., 2009 WL 3152163, at *3 (E.D. Pa. Sept. 30, 2009) (citing Feldman v. Google, Inc., 513 F. Supp. 2d 229, 245-46 (E.D. Pa. 2007)). Nevertheless,

7

permissive forum selection clauses have been viewed as a "manifestation of the parties' preferences as to a convenient forum." Jumara, 55 F. 3d at 880; see also Cancer Genetics, Inc. v. Kreatech Biotechnology, B.V., 2007 WL 4365328 (D.N.J. Dec. 11, 2007) (viewing a permissive forum selection clause as a manifestation of the parties preferences that weighs in favor of transfer). In light of the foregoing, the Court views the permissive forum selection clauses applicable to 46 of the claims at issue as a fact that deserves meaningful consideration.

Having considered all of the facts and circumstances relevant to this factor, the Court affords Gordon's current forum preference for the Eastern District of Pennsylvania the very little weight it deserves.

2. *Defendant's Forum Preference*

Typically, the defendant's forum preference is "entitled to considerably less weight that Plaintiff's, as the purpose of a venue transfer is not to shift inconvenience from one party to another." EVCO Tech and Dev. Co. v. Precision Shooting Equip. Inc., 379 F. Supp. 2d 728, 730 (E.D. Pa. 2003) (citations omitted). Nevertheless, HMH's preference for litigating in the Southern District of New York is noted and, considering the import of the permissive forum selection clauses and the other private interests recognized below, is given the modest weight it deserves.

3. *Where the Claim Arose*

"Typically the most appropriate venue is where a majority of the events giving rise to the claim arose." In re Amkor Tech., 2006 WL 3857488, at *5 (citation omitted). "When the chosen forum has little connection with the operative facts of the lawsuit, such that retaining the action conflicts with the interests in efficiency and convenience, other private interests are afforded less weight." Cancer Genetics, Inc., 2007 WL 4365328, at *5 (citations omitted).

8

Here, there is no credible argument that the majority of the evens giving rise to Gordon's claim arose in the Eastern District of Pennsylvania. While Gordon could say that some of the alleged infringement took place here, the same could be said for every district in which HMH distributed materials containing one of more of the Photographs. Having reviewed the allegations in the Complaint and the exhibits attached to HMH's motions to transfer, it is clear that the Southern District of New York has a substantial connection to nearly all of the events that gave rise to Gordon's claim: Plaintiff resides and operates his business exclusively in the Southern District of New York; all of the Photographs were licensed by Gordon to HMH from the Southern District of New York; all of the payments from HMH to Gordon were sent to Southern District of New York; and HMH operates at least one office in the Southern District of New York.[6] This factor strongly favors transfer.

4.  *Convenience of the Parties*

With respect to the fourth private-interest factor, the Third Circuit has directed this Court to consider "the convenience of the parties as indicated by their relative physical and financial condition." Jumara, 55 F.3d at 879.

It appears that transfer to the Southern District of New York would be more convenient for both of the parties in this action. Gordon resides in New York, New York, so a courthouse that is a mere NYC Subway or Metro North ride away would certainly be more convenient for him than a courthouse that requires him to travel nearly 100 miles to Philadelphia. The Southern District of New York would also be more convenient for HMH and any of its party witnesses

---

[6] There is some evidence to suggest that the District of Massachusetts also has a substantial connection to the events that gave rise to Gordon's claim. For example, HMH is headquartered in that district, the relevant invoices were accepted in that district, and any decision by HMH to exceed the terms of the corresponding licenses (and thus infringe on Gordon's copyrights) would have presumably been made in that district. However, nobody has sought transfer to the District of Massachusetts, and even if someone had, the Southern District of New York appears to have a greater connection to the relevant events in this action.

traveling from its Boston headquarters, as the two courthouses in the Southern District of New York are closer to Boston than the U.S. Courthouse in Philadelphia. Counsel of record for HMH is located in Philadelphia, but HMH's motion shows that they have also retained attorneys in New York City and Chicago to represent them in this matter. Accordingly, transfer is neutral with respect to HMH's attorneys, as HMH will have experienced counsel nearby whether this action remains in this district or is transferred to the Southern District of New York. This Court recognizes that transfer would be slightly less convenient for Gordon's counsel, as Mr. Harmon's office is slightly closer to Philadelphia than it is to the Southern District of New York. This Court perceives no convenience difference for Mr. Kerr, as the difference between traveling to Philadelphia and traveling to the Southern District of New York for an attorney located in Wyoming appears negligible.[7]

Having considered the foregoing, the convenience of the parties and their attorneys militates slightly in favor of transfer to the Southern District of New York.

     5.     *Convenience of the Witnesses*

The fifth private-interest factor considers "the convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora." Jumara, 55 F.3d at 879. So far, the parties have only identified one non-party witness – Susan Lerner. Ms. Lerner appears to live and work in both New York City and southern Florida. If Ms. Lerner can be found in New York City, then she is subject to the subpoena power of the Eastern District of Pennsylvania and the Southern District of New York.[8] If Ms. Lerner can only be found in

---

[7]     The Court also recognizes that Messrs. Harmon and Rice may be slightly inconvenienced by transfer to the Southern District of New York if such transfer would require them to seek pro hac vice admission to practice in that court.

[8]     Ms. Lerner's purported New York City address (300 W. 17th Street, New York, New York, 10011) is within 100 miles of the U.S. Courthouse located at 601 Market Street, Philadelphia, PA, 19106.

10

southern Florida, then neither the Eastern District of Pennsylvania nor the Southern District of New York would be able to compel her appearance at trial. Neither district has an advantage over the other with respect to witness availability. Accordingly, this factor is neutral as to transfer.

      6.    *Location of the Books and Records*

The final private-interest factor requires consideration of the location of the books and records relevant to the claim in this action, but such consideration is "limited to the extent that the files could ne be produced in the alternative forum." Jumara, 555 F.3d at 879. Given the current state of technology with respect to copying, scanning, and electronically exchanging relevant documents, this Court perceives nothing about the anticipated evidence in this case that would militate for or against transfer. The Court anticipates that the relevant books and records would be equally available to the parties whether this action proceeds in the Eastern District of Pennsylvania or the Southern District of New York. Accordingly, this factor is neutral as to transfer.

    **B.**    **Public-Interest Factors**

      1.    *Enforceability of the Judgment*

The first public-interest factor concerns the enforceability of any potential judgment obtained in the original forum versus the proposed new forum. Jumara, 55 F.3d at 879. Ultimately, a judgment obtained in the Eastern District of Pennsylvania would be equally enforceable against HMH as a judgment obtained in the Southern District of New York. Both

---

Accordingly, she would be subject to deposition and trial subpoenas issued by this Court pursuant to Rule 45(c)(1)(A) of the Federal Rules of Civil Procedure.

judgments could be registered and subsequently enforced in any other federal district pursuant to 28 U.S.C. § 1963. Accordingly, this factor is neutral as to transfer.[9]

2. *Practical Considerations for Trial*

The second public-interest factor requires the consideration of "practical considerations that could make the trial easy, expeditious, or inexpensive." Jumara, 55 F.3d at 879. For the reasons discussed above with respect to the fourth, fifth, and sixth private-interest factors, trial in the Southern District of New York would likely be slightly easier, more expeditious, and less expensive than trial in the Eastern District of Pennsylvania. In addition, with respect to Ms. Lerner, though she would be equally "available" in both districts, if she does indeed reside in New York City, it would undoubtedly be easier for her to participate in a trial held in the Southern District of New York. Accordingly, this factor weighs slightly in favor of transfer.

3. *Administrative Difficulty*

The third public-interest factor addresses "the relative administrative difficulty in the two fora resulting from court congestion." Jumara, 55 F.3d at 879. HMH concedes that "there is little difference between this Court and the Southern District of New York in terms of court congestion." Def's Mem. of Law 7. In support of this assessment, HMH attached Tables C-1 and C-5 from the United States Courts' report detailing Federal Judicial Caseload Statistics for

---

[9] Since HMH has personnel, physical assets, and, presumably, financial assets located in the Southern District of New York, Gordon could enforce any judgment obtained there without the minimal burden of registering it in a district where HMH has such assets. In contrast, any judgment obtained by Gordon in the Eastern District of Pennsylvania would likely require registration in a second district, since HMH has no personnel or offices in Pennsylvania. However, this difference does not impact the legal enforceability of any judgment obtained, and even if it did, the administrative task of registering the judgment is so minimal that it does not impact this Court's analysis.

the 12-month period ending December 31, 2013. See Def.'s Mem. of Law Exs. F-G.[10] Having considered the total caseloads of both districts, the median time to disposition for civil cases in both districts, and the number of operating judges and judicial vacancies in both districts, this Court agrees with HMH that there is little difference between the two districts with respect to court congestion. Accordingly, this factor is neutral as to transfer.

4. *The Local Interest*

The fourth public-interest factor weighs "the local interest in deciding local controversies at home." Jumara, 55 F.3d at 879. No matter how small an interest the Southern District of New York has in resolving this controversy, it must trump the interest possessed by the Eastern District of Pennsylvania. As noted elsewhere, this district has almost no connection to this action. In contrast, the Southern District of New York could rightly be considered the "home" of this dispute in light of: (1) Gordon being a citizen of the State of New York; (2) Gordon operating his business exclusively in of the Southern District of New York; (3) HMH having offices and personnel in the Southern District of New York; and (4) all of the licenses for the Photographs being either transmitted from or to the Southern District of New York during the contracting process. While Gordon alleges that HMH infringed his copyrights by distributing infringing works throughout the country, to the extent that this controversy has a local connection, that local connection is within the jurisdictional boundaries of the Southern District of New York. Accordingly, this factor weighs in favor of transfer.

5. *Public Policies of the Fora*

The fifth public-interest factor concerns "the public policies of the fora." Jumara, 55 F.3d at 879. The parties did not address this factor in a meaningful way in their written

---

[10] Updated tables reflecting information for the 12-month period ending March 31, 2014, are now available at: http://www.uscourts.gov/statistics-reports/federal-judicial-caseload-statistics-2014-tables. The Court reviewed these updated tables in addition to the versions presented by HHM.

submissions, and the parties did not elaborate on the application of this factor during oral argument. As a result, and because this Court has not independently identified any relevant public policy of either fora implicated by the instant motion, this factor is neutral as to transfer.

      6.    *Familiarity with State Law*

The sixth public-interest factor addresses "the familiarity of the trial judge with the applicable state law in diversity cases." Jumara, 55 F.3d at 879-80. Though this case is based on federal question jurisdiction and not diversity jurisdiction, questions of New York state law will be relevant to the interpretation of the licenses implicated by Gordon's copyright claim. While this Court is confident that it could ably interpret and apply New York law to the extent that it becomes relevant to this action, a United States District Court Judge sitting in the Southern District of New York would undoubtedly have more experience with New York law than this Court. See, e.g., Landmark Bldg. Systems, Inc. v. Whiting-Turner Contracting Co., 2003 WL 21293812, at *2 (E.D. Pa. Apr. 21, 2003) (recognizing that judges in the District of Maryland have more familiarity with Maryland law than judges in the Eastern District of Pennsylvania). To the extent that this factor may be considered, it weighs slightly in favor of transfer.

## III.    CONCLUSION

Having considered the public-interest and private-interest factors as outlined above, and in light of all the facts and circumstances presented to the Court by way of pleading, motion, and oral argument, in the interest of justice the Defendant's motion to transfer venue to the Southern District of New York will be granted.